26 C.C.P.A. (Patents)

## In re SCHMIDT.
### Patent Appeal No. 4041.

Court of Customs and Patent Appeals.
Dec. 27, 1938.

674

· George H. Kennedy, Jr., of Worcester, Mass. (Charles E. Riordon, of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the examiner rejecting, for want of patentability over the cited prior art, claims 109, 110, 116, 117, and 118 of appellant's application for a patent. Said decision of the board also affirmed the decision of the examiner rejecting twelve other claims of appellant's application, but appellant has not appealed from the rejection of said claims. It appears that twenty-eight claims have been allowed.

Claim 109 illustrates the general subject matter involved and reads as follows: "109. In a double-end boring machine, a base, a reciprocatory carriage on the base, a rotary spindle at each end of the base, a source of power below the carriage and driving connections from said power source to the spindle at each end of the base, each driving connection having a clutch mechanism for controlling the spindle rotation independently of the operation of the power source, and means responsive to movement of the carriage for actuating each of the clutch mechanisms independently."

The references cited are:

Barnes et al., 1,880,666, October 4, 1932.
Ferris, 1,946,902, February 13, 1934.
Alden, 2,000,553, May 7, 1935.

As indicated in the quoted claim, appellant's application relates to a boring machine, and it is contended by him that the claims before us involve improvements over the prior art, and that such improvements are inventive in character.

For present purposes the general nature of the apparatus involved in appellant's application will be outlined. It consists of a boring machine having a double tool head, one mounted at each end of the machine. The machine has a base; upon this base are horizontal guideways, over which is mounted a reciprocating carriage. This carriage carries a workholder, upon which the material to be operated upon is mounted, the workholder moving with the reciprocating carriage toward one or the other of the tool heads. The tool heads are mounted on bridge members placed over opposite ends of the guideways.

The carriage is reciprocated by a fluid motor consisting of a fixed cylinder and a piston connected to the carriage. The boring tools are driven by belts from a common motor. Interposed in the drive is a clutch member for each tool head and a separate brake for each, alternatively driving and stopping the spindles as the work material is advanced toward and retracted from the tools.

The reciprocation of the table is controlled by a system of valves, including a reversing slide valve and pilot valve. The operation is automatic, being accomplished by engagement of the pilot valve with a lever actuated by dogs properly positioned to actuate the valve at the proper time. A bleed port in each end of the reversing slide valve makes necessary an elapse of some time at the end of travel of the carriage for the escape of fluid in sufficient amount to permit reversal, causing a "dwell" of the carriage when it has completed its travel in either direction. Positive stops also place a definite limit on the distance traveled by the carriage. It should also be added that between the reversing valve and each end of the fluid motor cylinder is a rate control valve which, when operated by dogs properly positioned, reduces the rate of movement of the carriage during a certain stage of its travel.

The reversal of the piston in the cylinder in the fluid motor, and consequently the reversal of the carriage, is accomplished by connecting the fluid pressure source and the exhaust line, by means of the valve mechanism shown, alternately to opposite ends of the cylinder.

The clutch brake units are controlled by connections to the fluid lines leading to the ends of the table propelling cylinder. By this means the clutch for either tool head is engaged while the carriage is proceeding toward it, and its brake is energized when the table is reversed. Manual controls for the table and clutch-brake units are also provided, but this feature is not involved in the issue here.

The above is a description in general terms of the mechanism here involved.

The patent to Barnes et al. is for a single head boring machine. In this patent, however, the work table is reciprocated by a cam on a shaft driven by a clutch from a motor. The cam carries a dog for throwing out the clutch to stop the machine at the end of one revolution, which is a complete cycle of operation. The tool head in this patent is driven from a second motor by means of a clutch-brake device; this clutch-brake mechanism is also operated by a cam carried by the same shaft which carries the cam for reciprocating the work table. The sequence of operation consists of engaging the clutch to operate the tool head when the work table approaches the tool, and releasing the clutch and applying the brake as the table is retracted.

The Ferris patent relates to a single head machine, such as a boring machine or lathe; it shows a reciprocable tool carriage which is moved by a fluid pump unit, the direction and rate of movement being controlled by a valve shown. Means is provided for a positive stop to prevent further movement of the carriage when it has reached the end of its travel; means is also provided for delaying the reversing of the carriage at the end of its travel, the period of delay being adjustable by valve means shown.

The Alden reference deals with a double-end machine, having a reciprocating work table controlled in direction and speed by a fluid motor. In this patent the spindles on the separate tool heads are driven by individual motors, which are supplied with brake and clutch mechanisms; each motor has an electric switch which controls it, the switch being closed by a piston when a given motor is to be operated, and the brake for such motor being released by the same piston.

The Board of Appeals considered the claims in four separate groups. Appellant's counsel in his brief intimates that it was improper for the board to do so, and that perhaps this method of handling the claims resulted in the board's failure to appreciate what appellant contends are the patentable features of his claims. Responding to this contention, it may be said that the examiner made separate examination of the claims. Under the doctrine announced in Re Wagenhorst, 64 F.2d 780, 20 C.C.P.A., Patents, 991, the affirmance of the examiner's decision by the board has the legal effect of a rejection upon the grounds and references cited by the examiner, and not expressly reversed by the board. As a matter of fact the board allowed one claim, No. 111, which the examiner had rejected, which would seem to indicate that, while treating the claims in groups for the purpose of its decision, the board actually considered each claim separately.

With respect to those elements of the claims before us which appellant contends render them patentable, it may be said generally that, for the most part, such elements are not shown in the references, but it was held by the Patent Office tribunals that the placing of such elements in the combination required only the exercise of mechanical skill, or that such elements were merely the equivalents of elements shown in the references.

No useful purpose would be served in analyzing each claim in view of the question involved, but to illustrate the general nature of appellant's contentions we will discuss claim 109 at some length.

This claim was rejected by the examiner on the references Alden and Barnes. The examiner held that there was no invention in substituting a single source of power for the whole machine and clutches for the spindle drives instead of the individual motor drives for spindle and fluid pump in the Alden patent, and that such drives are common and are interchangeably used in machines; he further held that the substitution of the common power source and clutches made no difference in the operation of the machine. With reference to the Barnes et al. patent the examiner held that the single source of power for both tools and table shifting means disclosed by appellant is immaterially different from the separate motors shown in Barnes as connected to those elements. The feature of having tool heads at each end of the machine was held not to be patentable in view of Alden, the examiner holding that furnishing a common source of power for the two tool heads was an obvious variation of conventional power drives. With respect to the controls for the clutches, the examiner held this to be met in Barnes et al., and he further held that the control shown in the application is only a mechanical alternative to the identically operated switch control for the motors shown in Alden.

The Board of Appeals considered claim 109 as one of a group of claims, Nos. 101

to 109, inclusive, of which claim 109 alone is before us. With respect to this group the board stated:

"In general, the claims of the first group referred to involve the utilization of a single motor for reciprocating the work support and for rotating the boring tool and the stopping of the tool rotation through the use of clutch and brake mechanism.

"In the Barnes et al. patent relied on by the examiner, the tool is rotated from the motor located underneath the reciprocatory carriage, as specified in certain of these claims, but a separate motor is provided for producing the reciprocation of the carriage.

"In the Alden patent a fluid motor is utilized to effect carriage reciprocation and individual electric motors are provided for each spindle, these motors being directly connected to the spindles and being controlled by switches and brakes. It is the examiner's view that it would not amount to invention to utilize a single motor instead of two motors, as taught by Barnes et al. or to use a single motor in lieu of the several motors employed by Alden.

"Appellant urges that it would be impossible with the arrangement shown by Barnes to provide a single source of power for the spindles and carriage reciprocating means. This contention appears to be based on the different rates of speed at which the spindle and cam drum are driven. We see no difficulty in providing suitable gear ratios to give any desired speed rate to these elements.

"We think claims such as 101, which involve the mere substitution of a single motor for two motors in a construction such as shown by Barnes et al. are clearly unpatentable. * * * Barnes clearly teaches that a boring tool can be controlled through the use of clutch and brake mechanism when driven by a power means located beneath the work-supporting carriage. The substitution of this driving expedient for the expedient used by Alden seems to us a matter requiring no more than mechanical skill. We also think it an obvious alternative to employ a single motor for all power requirements instead of a plurality of motors, if desired. The obtaining of the proper speed is clearly a matter of proper gear ratio and a problem which could readily be solved by any mechanic."

Appellant argues in his brief that the decisions of the tribunals of the Patent Office were erroneous, and that claim 109 is patentable by reason of that element reading "and means responsive to movement of the carriage for actuating each of the clutch mechanisms independently." He insists that in Barnes et al. the clutch mechanism there shown controls only the one set of boring spindles, and that Barnes had no conception of controlling the clutch mechanism for the spindles by "means responsive to movement of the carriage." With respect to the Alden patent, it is emphasized by appellant that Alden shows two tool heads, each of which has within it a driving motor, and he argues that this distribution of weight was conducive to a top-heavy condition of the machine which was highly undesirable and resulted in vibration being transmitted to the spindles with a resulting adverse effect on the quality of work performed. Appellant makes other contentions regarding the failure of the references to meet claim 109, all of which have been carefully noted and studied.

The gist of appellant's argument seems to be that he has succeeded in accomplishing superior results with his structure. It may be conceded, as we think was done by the tribunals of the Patent Office, that no one of the references or combination of references will show the exact details which he discloses. Even so, the question remains whether such adaptations of prior art disclosures and such changes as appellant has made constitute an exercise of the inventive faculty.

The Patent Office tribunals found in the negative; we have carefully analyzed all of the contentions of appellant in behalf of the patentability of claim 109, with the result that, while we recognize that appellant's structure involved modifications of the prior art structures, we are not convinced that the Patent Office tribunals were clearly wrong in holding that the claim here under discussion did not involve elements which render it patentable, and we therefore think, under the well-established rule, that the decision of the board with respect to this claim should be affirmed.

With respect to the remaining claims, as hereinbefore indicated, we will not enter into a detailed analysis of each of them.

The Patent Office tribunals have held that these claims lack patentability. We have carefully considered appellant's dis-

cussion in the brief of his counsel and upon oral argument respecting those elements of each of said claims which he contends render them allowable, but he has failed to satisfy us that the Patent Office tribunals erred in holding that the addition of such elements did not require the exercise of the inventive faculty.

It should be remembered that the Barnes and Ferris patents are for single head boring machines, and only the patent to Alden is for a double head machine. Naturally, in modifying a single head machine to produce a double head machine, or in adapting a double head machine having multiple power sources to produce a double head machine using a single power source, many elements would be necessarily utilized, the use of which would be obvious to one skilled in the art, with all three of the patents before him. The Patent Office tribunals have, in effect, so characterized the elements in the claims before us and, as above indicated, we are not satisfied that they erred in so doing.

The decision of the Board of Appeals is affirmed.

Affirmed.